LETELE FAMILY by Toilolo
LETELE FAMILY by Pule, Plaintiffs

v.

LAFOGA of Pavaiai, Defendant

No. 17-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Falefasa" in Pavaiai]

June 7, 1949

A. A. MORROW, *Chief Justice;* MALEPEAI, *District Judge;* and NUA, *District Judge.*

DECISION

Heard at Fagatogo May 24, 1949.
Pule and Toilolo for Letele Family; Mapu for Lafoga.

MORROW, *Chief Justice.*

Lafoga of Pavaiai filed her application with the Registrar of Titles to have the land Falefasa lying in the village of Pavaiai registered as her individually owned property. The application was accompanied by a survey of the tract. Toilolo and Pule each acting as a representative of the Letele family filed objections to the proposed registration claiming that the land was the communal family property of the Letele title. This litigation arises as a result of these objections. See Sec. 905 of the A. S. Code. Prior to the hearing the court viewed the land in the presence of the parties.

At the hearing Lafoga made no claim that the land was her own property. She testified that "The land Falefasa belongs to my true father Aea" and that it was "Aea's individually owned land." She further testified that she was a member of the Letele family.

The matai name record shows that the matai name Aea was registered for the first time on February 25, 1938 by

Laufasa who is the present Aea and the father of Lafoga. The record further shows that Laufasa was registered as the Letelesa (Letele) on November 12, 1914 and that he resigned from such title on February 23, 1938. On February 25, 1938 Pouli, a blood son of Laufasa, was registered as the holder of the Letele title, resigning therefrom on July 31, 1947. The evidence showed that Aea's father was Faalalai and that he was holding the Letele title when the government was established in 1900.

Aea's own testimony convinces us that the land Falefasa is the communal family property of the Letele title and not his individually owned land. During the 24 years that Aea held the title Letele he lived on Falefasa and had his guest house thereon. Faalalai, according to Aea, lived on the land Falefasa after it was cleared from bush and during part of the time he held the title Letele. He had his guest house on it. After Aea (Laufasa) resigned from the Letele title and Pouli took it, Pouli lived on the land and had his guest house on it. Just when Faalalai first entered upon the land and put up his guest house is not clear from the evidence, other than that it was sometime between the establishment of the government in 1900 and 1914. It is very clear that Faalalai, Aea and Pouli had the Letele guest house on Falefasa, each in succession, for a period of more than 33 years preceding 1947, when Pouli resigned from the title.

Aea's testimony convinces us that Faalalai cleared this land from the bush while he was holding the title Letele and that in clearing it he was aided by his children. In the case of *Leasiolagi v. Fao*, No. 12-1949 (Am. Samoa) this court said ". . . it was the custom for the matai and members of his family clearing bush land and occupying it to claim it as communal family land and not as the individually owned land of either the matai or the family members occupying it." In the case of *Soliai v. Levu*, No. 6-1949 (Am. Samoa) it was stated that "This court judi-

cially knows that when the members of a Samoan family took possession of bush land and used it in the early days, ownership was claimed not by such members in their own right but in behalf of their matai as owner of the communal family property." In the case of *Soliai v. Lagafua*, No. 5-1949 (Am. Samoa) we said "Occupation coupled with a claim of ownership will establish ownership to what was bush land before occupation. See 2 Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am. Ed.) at p. 238. This doctrine of acquisition or original title by the first occupant, accompanied by a claim of ownership, was approved by this court in the case of *Faataliga v. Fano*, No. 90-1948 (Am. Samoa)."

■ In view of Samoan customs the presumption is that when Faalalai and his children cleared the land Falefasa from bush sometime after the establishment of the government and prior to 1914 and claimed it, he claimed it as communal family land of the Letele title since he was holding that title at the time. The evidence in the record does not rebut this presumption. If, as the evidence shows, Letele Faalalai cleared this land from the bush and took possession, put up his guest house thereon and Leteles occupied it continuously, having their guest houses thereon, for more than 33 years prior to the resignation of Pouli in 1947, we can reach no other conclusion than that Falefasa is Letele land, the communal family land of the Letele title.

■ Counsel for Lafoga claimed in his final argument that since Aea had occupied this land for more than 20 years he became the owner of it through adverse possession. To become the owner of land by adverse possession it is not enough that a man merely occupy it for 20 years. He must claim it as his own during all that time. We are convinced

from the evidence that Aea when he held the Letele title from 1914 to 1938 and lived on the land did not claim it as his own. We are further convinced that he occupied the land through his right as the matai of the Letele family and merely claimed that it was the communal family land of the family. It is the custom for matais in American Samoa to live on family lands and to claim the land so occupied as the communal land of the family.

■ "An adverse claim must be hostile at its inception, although the original entry need not always be of a hostile character. There are numerous instances wherein the occupancy of land with no original intent to claim adversely subsequently became, in fact, hostile; but their existence does not affect the principle that an adverse possession must be hostile from the beginning, because where the original entry is not adverse, it does not become so and the statute does not begin to run as against the rightful owner until the adverse claimant disavows the idea of holding for, or in subservience to, another and actually sets up an exclusive right in himself by some clear, positive, and unequivocal act. Mere declarations will not suffice. Nor, in such cases, is the mere intent to hold adversely of any consequence. The character of the possession must become hostile in order that it may be deemed to be adverse. And this hostility must continue for the full statutory period ..." 1 Am.Jur., Tit. Adv. Poss., Sec. 137.

Hostility "means only that one in possession of land claims the exclusive right thereto. It also imports a denial of the owner's title. The mere possession of land does not in and of itself show hostility to the owner thereof. Indeed, there is every presumption such an occupancy is in subordination to the legal title." Id., Sec. 138.

■ It is clear that when Aea entered upon the land in 1914 as the holder of the title Letele he claimed it as the communal property of the Letele family. There is no evi-

dence in the record to indicate that during the 24 years he held the title Letele he ever disavowed the ownership of the land by the Letele family or gave notice either by word or act of disavowal to the other members of the family. Under these circumstances his possession was not adverse to the family (clan) so as to give him title at the end of 20 years. The true owner of land must have an opportunity to learn of the adverse claim and to protect his rights. See 4 Tiffany, Real Property (3rd ed.) Sec. 1140. The occupation by a matai of family land is no indication whatever to the members of the family that he is claiming it as his own individual property. Consequently such occupancy will not be adverse, there being no notice of claim as individual owner. See Id., Sec. 1142.

■ The relationship of a matai to members of his family (clan) is akin to that of parent and child; in fact, clan members normally refer to their matai as their "father." It is common learning that "As a general rule, an adverse possession cannot be predicated on the possession of the parent as against a child, or on the possession of the child as against its parent." 1 Am.Jur., Tit. Adv. Poss., Sec. 30. We conclude that Aea did not get title to Falefasa by adverse possession.

Aea and his blood children and Puailoa, who is married to Aea's blood daughter, have lawfully occupied the land Falefasa in accordance with Samoan customs for many years and pursuant to such customs they have the right to continue to so occupy it. Of course, the Letele will be entitled to service in accordance with Samoan customs.

In view of our findings from the evidence it is ORDERED, ADJUDGED and DECREED that the land Falefasa in Pavaiai be registered as the communal family land of the Letele title.

The Registrar of Titles will be advised of this decree.

Since Aea, or his daughter Lafoga, paid for the survey

and the benefit thereof will inure to the Letele family it is equitable that Pule and Toilolo, the objectors representing the Letele family, should pay the costs. Accordingly costs in the amount of $12.50 are hereby assessed against them as such representatives, the same to be paid within 15 days.